# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYNN JEAN PIEKSMA, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 15 C 7312 |
| v. ) ) | Judge Jorge L. Alonso |
| BRIDGEVIEW BANK MORTGAGE ) COMPANY, LLC, and BRIDGEVIEW ) BANCORP, INC., ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff's motion for conditional class certification [32] and defendants' motion to strike [52]. For the reasons set forth below, plaintiff's motion is granted and defendants' motion is denied.

## BACKGROUND

Plaintiff, Lynn Jean Pieksma, worked as a Mortgage Banker ("LO")[1] at Bridgeview Bancorp, Inc.'s ("Bridgeview") Irvine, California office from March 2013 through September 2013. (Pl.'s Mot., Ex. C ¶ 2 Pieksma Decl.) Pieksma alleges that Bridgeview and its subsidiary, Bridgeview Bank Mortgage Company, LLC, violated the Fair Labor Standards Act ("FLSA") by failing to properly pay LOs minimum wage and/or overtime compensation for time worked off the clock and unlawfully deducting any minimum wages and overtime compensation from LOs' paid commissions. (Pl.'s Mot. at 2.) Pieksma brings these claims as a collective action on behalf of all non-exempt LOs who worked for defendants in the last three years and asks the Court to (1) grant conditional class certification for all current and former LOs and other like loan officers

---

[1] LO refers to Mortgage Bankers and other loan officers with similar titles. (Pl.'s Mem. at 1.)

who worked for defendants for the last three years to the present; (2) allow Pieksma to act as class representative and appoint Rowdy Meeks Legal Group, LLC as class counsel; and (3) approve the provided notice and consent to class members, order defendants to post the notice at each of their branches, and to provide a list containing all class members' contact information within fourteen days of conditional certification. (*Id*. at 2, 5.) At the time plaintiff filed her motion, fifteen LOs from four of defendants' offices had joined this matter by filing consents. (*Id*. at 3.)[2] Defendants object and assert that Pieksma, like many of the other opt-in plaintiffs, recorded and was paid overtime during the time she worked for defendants. (Defs.' Mem. at 2.) Defendants also contend that between January 2013 and August 2015, they paid nearly $600,000 in overtime to LOs and that in 2015 more than a third of LOs were reporting overtime. (*Id*.) According to defendants, these facts demonstrate that there was no class-wide bar to reporting overtime and conditional class certification should be denied. (*Id*.)

**STANDARD**

The FLSA generally requires overtime pay for employees who work in excess of forty hours per week "unless they come within one of the various exemptions set forth in the Act." *Schaefer-LaRose v. Eli Lilly & Co.,* 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). The FLSA also permits collective actions by employees "on behalf of themselves and other similarly situated employees." *Alvarez v. City of Chi.,* 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). "[C]ourts in this district have commonly applied a two-part test to determine whether an FLSA claim may proceed as a collective action." *Binissia v. ABM Indus.,*

---

[2] There are still fifteen LOs who have filed consents to sue in this case. They are not the same LOs who had done so at the time plaintiff filed her motion. The LOs who have filed consents are: Lynn Jean Pieksma [1], Joe Chacko [1], William Burns [1], Johnathan Kardos [1], Jeffery Mix [1], Nicholas Griffin [14], James Finch [16], Craig Levin [18], Carmen Campos [19], Roger Hayes [20], Jason Weatherman [21], Kevin Heindel [24], Sean Monaco [50], Steven Van Warner [50], and Michael Pfeil [76]. Marc Czajkowski [70], Terry Sroka [74], and Robert Rutt [75] withdrew their consent forms after plaintiff filed her motion.

*Inc.,* No. 13 C 1230, 2014 WL 793111, at *3 (N.D. Ill. Feb. 26, 2014). At the first stage, "if the plaintiffs make a modest factual showing sufficient[ly] . . . demonstrat[ing] that they and potential plaintiffs . . . were victims of a common policy or plan that violated the law," the Court will conditionally certify the collective action. *Boltinghouse v. Abbott Labs., Inc.,* No. 15 CV 6223, 2016 WL 3940096, at *2 (N.D. Ill. July 20, 2016) (internal quotations and citations omitted). To meet this standard, "plaintiffs must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy" that violated the law. *Binissia,* 2014 WL 793111, at *3. "[A]t this initial stage, 'the court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.'" *Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 15-CV-10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 13, 2016) (quoting *Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013)). "In the second stage, after the completion of discovery and the opt-in process, the court reexamines the conditional certification to determine whether the trial as a collective action is proper." *Boltinghouse,* 2016 WL 3940096, at *4.

## DISCUSSION

### Defendants' Motion to Strike Plaintiff's Declarations

Defendants argue that the Court should disregard plaintiff's declarations because they are unreliable. (Defs.' Resp. at 11.) Specifically, defendants assert that the declarations are boilerplate, conclusory attorney-drafted statements that lack specificity and are at times contradictory. (*Id.* at 11-13.) Defendants argue that at a minimum they should be given the opportunity to depose the declarants, obtain answers to already-issued discovery, and submit additional briefing prior to ruling on the motion for class certification. (*Id.* at 15.) In their

3

separate motion to strike, defendants further assert that the statements are not based on the declarants' personal knowledge, are hearsay or rely on hearsay, and should be excluded pursuant to Federal Rule of Evidence 403. (Defs.' Mot. at 2.) Plaintiff urges the Court to deny defendants' motion because motions to strike are generally disfavored and the motion is an attempt by defendants to prematurely address the merits of the case. (Pl.'s Reply at 7.) They further contend that the similarity of the declarations is evidence that supports conditional certification, the declarations are based on the personal knowledge of the declarants, and they do not contain hearsay statements. (*Id*. at 8-11.)

The Court notes that plaintiff has submitted thirteen nearly identical declarations, except for personal identifiers, from LOs in three different offices and managers from a fourth. (Pl.'s Exs. C and F.)[3] In the declarations, the LOs all indicated that they were trained by employees from Bridgeview's corporate offices. (Pieksma Decl. ¶ 3.) At those trainings, the LOs were told that the same employment and pay policies and procedures applied to all LOs. (*Id.*) The declarations further indicate that LOs usually worked more than forty hours per week and that Bridgeview did not pay them overtime for all of the hours worked in excess of forty. (*Id.* ¶ 5.) The LOs also assert that their managers discouraged them from reporting all of their overtime hours, that they regularly worked "off the clock," and that they did not fully report all of the hours they worked. (*Id*. ¶¶ 8, 9.) Finally, the LOs indicate that based on their experiences and observations from working for Bridgeview, other LOs were subject to the same policies,

---

[3] Plaintiff also submits a declaration from Terry Sroka, but since his consent to sue was withdrawn, the Court will not consider it.

including working "off the clock," not being paid for all overtime worked, and having hourly compensation, including overtime pay, deducted from their commissions. (*Id.* ¶ 10.)[4]

The Court rejects defendants' argument that plaintiff's declarations should be disregarded because they appear to be attorney drafted. *See Basil v. CC Servs., Inc.,* 116 F. Supp. 3d 880, 894 n.2 (N.D. Ill. 2015) ("It is common knowledge that declarations are drafted by attorneys, so the similarities between the [plaintiffs'] declarations are neither surprising nor relevant. Provided that their statements fall within the scope of information about which the [plaintiffs] would have personal knowledge, those statements are admissible evidence[.]").[5]

To the extent that defendants assert that plaintiff's declarations are not supported by personal knowledge, the Court also rejects that argument. "A declarant's 'personal knowledge may include reasonable inferences, as long as those inferences are grounded in observation or other first-hand personal experience.'" *Berndt v. Cleary Bldg. Corp.,* No. 11-cv-791-wmc, 2013 WL 3287599, at *4 (W.D. Wis. Jan. 25, 2013) (quoting *Payne v. Pauley,* 337 F.3d 767, 772 (7th

---

[4] Paragraph 10 in Pieksma's and Chacko's declarations reads as follows: "Based on my experience and observations from working for Bridgeview, I understand that other Bridgeview LOs had the same/similar recoverable draw against commission compensation plan as I did, and were subject to the same policies and practices regarding their pay by *PNC*, including similarly working 'off the clock,' not being paid for all overtime hours worked, and had hourly compensation including any overtime pay deducted from their commissions." (Pieksma and Chacko Decls. ¶ 10.) (emphasis added). In the nine additional declarations from LOs, paragraph 10 reads identically, except "PNC" is replaced with "Bridgeview," the proper employer and defendant in this case. (*See* Griffin, Campos, Burns, Hayes, Heindel, Levin, Weatherman, Finch, and Kardos Decls. ¶ 10.) While this oversight bolsters defendants' argument that the declarations are attorney-prepared statements, the Court does not find such carelessness to be fatal to plaintiff's motion because the error is harmless. *See Jones v. Natesha,* 151 F. Supp. 2d 938, 946 n.3 (N.D. Ill. 2001) (mistakenly bringing a claim under the Fourth Amendment rather than the Fourteenth Amendment was a harmless scrivener's error). Assuming that "PNC" was intended to read "Bridgeview" in Pieksma and Chacko's declarations, the Court deems this mistake a harmless scrivener's error. *See id.*

[5] The Court also rejects the notion that plaintiff's declarations are untrustworthy. Plaintiff's allegation that LOs were not paid *all* of the overtime they were owed is not refuted by evidence that some plaintiffs were paid minimal amounts of overtime while they were employed by defendants. *See Gomez v. PNC Bank, Nat'l Ass'n,* 306 F.R.D. 156, 174 n.4 (N.D. Ill. 2014). The Court acknowledges that the four declarations from LOs who worked in defendants' Irvine, California office reflect a differing understanding of how many LOs worked in that office during the relevant time frame. Based on the submissions, the parties understand "LO" to include mortgage bankers, mortgage loan officers, and other loan officers. It is reasonable to presume that some of the declarants understood "LO" to strictly refer to one of those subsets, while others understood it to refer to all three subsets. Accordingly, the Court does not find this discrepancy fatal to the reliability of the declarations.

Cir. 2003)). In the declarations plaintiff submitted, all the declarants certify, based on their "experience and observations from working for Bridgeview," that the other LOs had similar compensation plans and were subject to the same policies regarding their pay. (Pieksma Decl. ¶ 10.) Even if those "other LOs" were LOs at the declarant's branch, plaintiff submitted declarations from LOs or managers from four separate offices in different parts of the country, confirming that these policies were not isolated to one office or manager. *See Clark v. Dollar Gen. Corp.,* No. 3:00-0729, 2001 WL 878887, at *1 (M.D. Tenn. May 23, 2001) (denying defendant's motion to strike portions of plaintiffs' declarations and finding that "to the extent that the declarants described practices that occurred in their stores, that evidence is based on personal knowledge[.]").

Finally, the Court finds unavailing defendants' argument that plaintiff's declarations should be stricken because they rely on hearsay to allege a company-wide policy. The declarants do not infer such a policy based on the directive by their managers to record only forty hours of work per week no matter how many hours more than forty they worked. Rather, those directives support the conclusion that each declarant's manager knew that each declarant was not fully reporting all of the hours he or she worked. Further, the directives can be construed as statements by a party opponent. *See Zamudio v. Nick & Howard LLC,* 15 C 3917, 2016 WL 740422, at *2 (N.D. Ill. Feb. 23, 2016) ("The manager's statement is admissible as an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D). It is being 'offered against a party' and is 'a statement by the party's agent . . . concerning a matter within the scope of the agency or employment,' and it was 'made during the existence of the relationship.'") (quoting Fed. R. Evid. 801(d)(2)(D)).[6] Moreover, courts in this district have denied motions to strike

---

[6] Further, the instructions from managers "were not hearsay because they were not 'statements' making any factual assertions." *Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015).

hearsay evidence from such declarations, reasoning that "[a] strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach" and that "[t]he most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage." *Howard v. Securitas Sec. Servs., USA Inc.,* No. 08 C 2746, 2009 WL 140126, at *3 (N.D. Ill. Jan. 20, 2009) (denying defendant's motion to strike hearsay evidence and requiring plaintiffs to submit admissible evidence at the second stage of certification, not the first). Accordingly, the Court declines to strike plaintiff's declarations. Defendants' motion is denied.

**Conditional Class Certification**

Plaintiff argues that the LOs are similarly situated under the FLSA and that they meet the modest factual showing that they are victims of defendants' illegal payment and timekeeping policies. (Pl.'s Mem. at 1, 3.) Defendants disagree and argue that conditional class certification should be denied. (Defs.' Resp. at 1.) Defendants assert that their policies and practices comply with the FLSA and any timekeeping deficiencies are sporadic and likely the result of an employee's willful disregard of defendants' practices. (*Id.*) Accordingly, defendants contend that the claims in this case are individualized and incapable of class-wide determination. (*Id.*)

### Similarly Situated

Plaintiff argues that the putative class members are similarly situated because they share the same or similar job title, essential job duties and mission, pay plan, and job description, and defendants advertise the LO position similarly nationwide. (Pl.'s Reply at 1.) Plaintiff asserts that an LO's primary job duty is selling loan products and that defendants' job postings establish that the LO position has the same job duties across the United States. (Pl.'s Mot. at 3; Ex. D.)

7

Defendants classify LOs as non-exempt employees who are entitled to overtime pay. (*Id.*; Ex. B ¶ 1.) In addition to the LOs' declarations, plaintiff also submits ten job postings for Mortgage Bankers, also called Mortgage Loan Officers, in Bridgeview's offices nationwide. (*See id.* Ex. D.) The job descriptions in the posts are identical. (*Id.*) Defendants do not appear to dispute that the LOs are similarly situated with regard to their job functions or compensation structure.

**Injury by Common Policy or Plan**

Plaintiff argues that the members of the putative class are victims of defendants' common policy or plan which (1) deducted all paid hourly compensation, including overtime, from commissions; and (2) refused or discouraged LOs from recording all time worked. (Pl.'s Reply at 1-2.) LOs swore that they were paid under a "draw against commission" compensation plan. (Pl.'s Mot. at 4.) Under that plan, LOs were treated like commission-only employees and were not paid overtime for time worked more than forty hours per week, because defendants deducted all hourly pay from LOs' commissions. (*Id.*) Plaintiff further asserts that LOs routinely worked in excess of forty hours a week, defendants instructed LOs not to record all overtime hours worked, and defendants established a company-wide policy of not paying LOs for off-the-clock work. (*Id.* at 4-5.) Further, plaintiff submits declarations from a Bridgeview Branch Manager and Assistant Manager who confirm that based on Bridgeview's orientation and training, the same employment and pay policies and procedures applied to all LOs. (Pl.'s Mot. Ex. F, Pfeil and Kalb Decls. ¶ 3.) Those two managers also attest that throughout their employment with Bridgeview, LOs usually worked more than forty hours per week and were not paid overtime for all the hours they worked in excess of forty. (*Id.* ¶ 5.) The branch managers confirm, through their discussions with Bridgeview corporate management, that the company knew of and established a policy directing LOs to only record forty hours of work each week, regardless of

how much overtime they worked. (*Id*. ¶ 8.) Finally, based on their experience working at Bridgeview, the managers attested that LOs were subject to the same policies, including working "off the clock," not being paid for all overtime hours worked, and having hourly compensation, including overtime, deducted from their commissions. (*Id.* ¶ 10.)

Defendants argue that some of plaintiff's claims are false or present individualized assertions inappropriate for class-wide determination. (Defs.' Resp. at 6.) Specifically, defendants assert that from January 2013 to August 2015, they paid LOs $600,000 in overtime, in 2015 in any given pay period about one-third of the LOs reported working overtime, and four of the opt-in plaintiffs in this case received overtime pay. (*Id*. at 2; Ex. 8.)[7] Defendants contend that LOs and management are repeatedly trained on their timekeeping rules and procedures, which require employees to input their time daily. (*Id.* at 3.) Defendants also assert that LOs were given access to their time cards to allow them to directly input and change their work hours in the electronic timekeeping system. (*Id.*; Exs. 8-11.)[8] Defendants monitor employee timekeeping to ensure that employees are recording their hours accurately and contemporaneously. (*Id*.) If, through that monitoring, defendants discover that employees are not following the timekeeping procedures, human resources sends that employee a warning. (*Id*. at 3-4; Ex. 12.) Defendants state they have sent many warning emails in the last few years and

---

[7] Defendants attest that they have employed 1,123 LOs over the past three years. (Ex. 8 ¶ 4.) If the $600,000 in overtime pay was distributed evenly to all of those LOs over that timeframe, each LO would have averaged approximately $178 in overtime pay per year. Defendants submit pay stubs reflecting that Pieksma, Finch, Griffin, and Levin were paid nine, two, three, and approximately two hours of overtime respectively over the course of their entire employment with defendants. (Exs. 1-2.) There are also submissions indicating that Sroka and Rutt, who have withdrawn their consents, were paid eight and approximately nine hours of overtime respectively over the course of their entire employment with defendants. (Ex. 2.)

[8] Defendants' employee handbook for 2015-2017 is included as Exhibit 9. The employee handbook from 2012-2014 is included as Exhibit 10. The 2015-2017 handbook contains a section specifically for LOs indicating that they had access to input, correct, and manage their time "punches." (Ex. 9 at 26.) The 2012-2014 handbook does not include that section. (Ex. 10 at 26.)

that some of the opt-in LOs' responses reveal that unwillingness and lack of awareness are the reasons for inaccurate timekeeping. (*Id.* at 4; Ex 8 ¶ 19; Ex. 13.)[9] Defendants argue that because there are no emails complaining that the warning emails were sent in contradiction to overtime reporting rules, no "wide-spread unwritten rule prohibiting accurate time-keeping" existed. (*Id.* at 5.) Furthermore, defendants argue that in at least one instance when they learned that an LO failed to accurately record overtime hours, defendants paid that employee back wages and overtime. (*Id.*; Ex. 14.)[10]

Plaintiff urges the Court to follow district precedent and reject defendants' merits arguments as premature. (Pl.'s Reply at 6.)

The decisions on which defendants rely are factually distinct and do not bind this Court. For example, in *Adair,* the court denied plaintiffs' motion for conditional certification, in part, because they failed to provide facts "to suggest that supervisors, other than their own, observed employees working outside their scheduled tours and permitted such conduct." *Adair v. Wis. Bell, Inc.,* No. 08-C-280, 2008 WL 4224360, at *7 (E.D. Wis. Sept. 11, 2008). Here, plaintiffs submit declarations from a manager and an assistant manager in Maryland and LOs who worked in defendants' offices in California, Kansas, and Ohio. All of those declarations corroborate similar policies that LOs were not paid for all of the hours they worked in excess of forty, were

---

[9] Defendants state that they have sent thousands of timekeeping warning emails. (Defs.' Resp. at 4.) In a declaration, defendants' human resources administrator, Matthew Kane, attested that he has sent two hundred warning emails in the last two years. (Defs.' Resp. Ex. 8 ¶ 19.) There is no evidence before the Court to suggest that more than those two hundred warning emails have been sent. Defendants submitted eight responses to timekeeping warning emails with the sender's name redacted, making it impossible for the Court to determine whether those emails were sent by LOs who have filed consents to sue or declarations in this case. (Defs.' Resp. Ex. 13.) Further, the email signatures from many of these responses indicate that the senders work in Omaha, Lombard, North Texas, and Tampa. (*Id.*) Most of the declarations submitted in this case are from LOs who did not work in those offices. Finally, while some of the responses mention a lack of awareness of the timekeeping policy, one expresses confusion about an LO's status as an hourly employee and others demonstrate efforts made to comply with the policy. (*Id.*) One response specifically indicates that the LO works more than forty hours but doesn't want to claim those hours, while another asks for overtime to be removed from his timecard. (*Id.*)

[10] The name of this LO has also been redacted. (Ex. 14.) The email signature indicates that she worked in a Chicago-area office and was paid the outstanding overtime upon her resignation. (*Id.*)

discouraged from reporting overtime, and had hourly pay, including overtime, deducted from their commissions. The declarations do not convey that only those declarants experienced these issues; rather, they demonstrate that many LOs from different offices with different managers were subjected to the same policies. Defendants also rely on *Allen*, where the court denied plaintiffs' motion for conditional class certification because of vague declarations coupled with the fact that several declarations indicated that some of the putative class members "were not ever required to work off the clock . . . and that they were properly paid for all the time worked, including overtime." *Allen v. Payday Loan Store of Ind. Inc.,* No. 2:13cv262, 2013 WL 6237852, at *7 (N.D. Ind. Dec. 3, 2013). That is not the case here. All of the declarations submitted indicate the LOs were paid under the same draw-against commission plan, usually worked more than forty hours a week for which they were not always paid, and were discouraged from reporting overtime hours.

Similarly, the Court finds unpersuasive defendants' reliance on *Flores,* where conditional class certification was denied because only a small percentage of the putative class submitted affidavits that reflected a potential violation of the FLSA. *See Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003). In that case, plaintiffs did not disagree with defendants' argument that plaintiffs had misinterpreted defendants' pay schedule and that two of the four affidavits plaintiffs had submitted did not contain evidence of any FLSA violations. *Id.* Further, the remaining affidavits demonstrated that only two plaintiffs had not been paid for one hour and one-half hour of overtime respectively during one pay period. *Id.* The court held that such minimal evidence was not a modest factual showing of a common policy or plan. *Id.* While the declarations here do not pinpoint a specific number of unpaid overtime hours, they do indicate that potential class members regularly worked more than forty hours a week over a number of

pay periods and were not compensated accordingly. These declarations, unlike those in *Flores,* create a factual dispute as to whether plaintiffs regularly worked off the clock. *See Berry v. Quick Test, Inc.*, No. 11 C 4435, 2012 WL 1133803, at *4 (N.D. Ill. Apr. 4, 2012); *Will v. Panjwani,* No. 1:13-cv-1055-JMS-MJD, 2013 WL 5503727, at *4 (S.D. Ind. Oct. 1, 2013) (distinguishing *Flores*).

Finally, defendants' assertions that they have paid some overtime do not negate the declarations in which LOs indicate they have not been paid all the overtime they are owed. *See Gomez v. PNC Bank, Nat'l Ass'n,* 306 F.R.D. 156, 174 n.4 (N.D. Ill. 2014) ("[E]ven if [defendant] has paid the overtime [declarant] claims it has, this does not negate the evidence in the record that [defendant's] management has denied compensation for overtime work on a number of occasions."). Further, courts in this district have held that merits-based arguments such as having a written policy regarding overtime and automatically paying all overtime are not appropriately considered at the first stage of conditional certification and that defendants "will have the opportunity to argue that individualized determinations predominate at the second step of the certification process[.]" *Anyere v. Wells Fargo, Co., Inc.,* 09 C 2769, 2010 WL 1542180, at *3 (N.D. Ill. Apr. 12, 2010) (citing *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008)); *see also Smith v. Family Video Movie Club, Inc.,* No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012); *Russell v. Ill. Bell Tel. Co.,* 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008). Plaintiff has submitted declarations from several LOs and managers from different offices that indicate that defendants had a policy of deducting hourly compensation and overtime pay from LOs' commissions, instructing LOs to only record forty hours of work, and failing to pay LOs for all overtime worked. Accordingly, the Court finds that plaintiffs have met the

modest factual showing required at this stage that LOs were subject to a common policy in violation of the FLSA, and grants the motion for conditional class certification.

**Notice**

Finally, defendants argue that the notice and consent form that plaintiff requests to distribute seeks unnecessary information, and they object to providing email addresses and telephone numbers and to distributing notice via email. (Defs.' Resp. at 15.) Defendants further argue that the notice is improper because it does not identify or provide contact information for defendants' counsel. (*Id.*) Plaintiff contends that it is common in this district for the employer to provide contact information and disseminate notice via email. (Pl.'s Reply at 11.) Additionally, plaintiff asserts that there is no legal support for defendants' argument that its counsel's contact information should be included with the notice, and that the inclusion of such information may lead to class members' confusion. (*Id.* at 12.) The Court agrees. Other courts in this district have authorized email notice in FLSA cases as a useful way to reach putative class members. *See Watson v. Jimmy John's, LLC,* 15 C 6010, 2016 WL 106333 (N.D. Ill. Jan. 5, 2016) ("[A]llowing email notice will facilitate, rather than complicate, the notice process[.]"); *Anyere,* 2010 WL 1542180, at *5 (approving plaintiffs' motion for notice and ordering defendants to produce putative class members' names, addresses, email addresses, telephone numbers, and social security numbers). The Court also declines to order plaintiff to include defense counsel's contact information on the notice. *See Gambo v. Lucent Tech., Inc.,* No. 05 C 3701, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005) ("[T]here is no basis in law or logic for [defendants'] request" to include defense counsel's name and contact information in the revised notice.); *Curless v. Great Am. Real Food Fast, Inc.,* 280 F.R.D. 429, 436 (S.D. Ill. 2012) ("A notice does

not need to include defense counsel's contact information."). Plaintiff's proposed notice, attached to her motion as Exhibit H, is approved.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for conditional class certification is granted and defendants' motion to strike is denied.

**SO ORDERED.**                   **ENTERED: December 22, 2016**

                                               _____
                                               **JORGE L. ALONSO**
                                               **United States District Judge**