**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LYNN JEAN PIEKSMA, on behalf of herself
and all others similarly situated,

              Plaintiff,

v.

BBMC MORTGAGE, LLC and BRIDGEVIEW
BANCORP, INC.,

              Defendants.

No. 1:15-cv-7312

Judge Jorge L. Alonzo
Magistrate Michael T. Mason

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Lynn Jean Pieksma (the "Named Plaintiff"), individually and on behalf of the conditionally certified collective of individuals that she represents in the matter *Pieksma v. BBMC Mortgage, LLC et al.* (collectively with Named Plaintiff, "Plaintiffs"), and Defendants BBMC Mortgage, LLC ("BBMC") and Bridgeview Bancorp, Inc. (collectively "Defendants") (Defendants together with Named Plaintiff, the "Parties").

### RECITALS

    **WHEREAS**, Plaintiff filed this lawsuit on August 20, 2015, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and various California wage/hour laws alleging that Named Plaintiff and similarly situated employees and former employees were not paid all overtime compensation due them during their employment with Defendants and that similarly situated employees employed in the State of California were not paid for rest breaks and provided meal periods in violation of California state law;

    **WHEREAS**, on December 22, 2016, the Court conditionally certified a collective consisting of all non-exempt Mortgage Bankers, Mortgage Loan Officers and other similarly titled mortgage loan officers (collectively referred to herein as "Mortgage Loan Officers" or "MLOs") who were employed by BBMC Mortgage, LLC or its successor division within Bridgeview Bank on and after August 20, 2012.

    **WHEREAS**, after the Court granted conditional certification, 261 individuals timely filed a Consent to Become a Party Plaintiff in this lawsuit;

    **WHEREAS,** the Parties engaged in extensive discovery and now have decided to settle this action;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in Section 4 of this Agreement and as alleged in the Complaint;

**WHEREAS**, Defendants deny all of the allegations made by Plaintiffs regarding this dispute, and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted by Plaintiffs. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle this dispute on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants, conducted interviews with Plaintiffs and others, obtained and reviewed documents relating to Defendants' policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the dispute, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs and putative collective and;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the dispute on the following terms and conditions.

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "Acceptance Period" means the 90 day period that an Eligible Settlement Collective Member has to cash a Settlement Check after it is received as defined in Section 2.9.

1.2 "Mortgage Loan Officer" or "MLO" means an employee of BBMC Mortgage, LLC or its successor division within Bridgeview Bank who held the position of BBMC Mortgage Loan Originator, Banker Assistant, BBMC Mortgage Banker, Junior Loan Originator, Mortgage Banker and Mortgage Loan Originator, performed the duties of, and was compensated as a mortgage loan originator and was classified in that position as non-exempt under the FLSA at any time from August 20, 2012 to January 31, 2019.

1.3 "Class Counsel" or "Plaintiffs' Counsel" means Rowdy Meeks Legal Group LLC.

1.4 "Court" means the United States District Court for the Northern District of Illinois.

1.5 "Defendants" means BBMC Mortgage, LLC and Bridgeview Bancorp, Inc.

1.6 "Defendants' Counsel" means Vedder Price P.C.

1.7 "Eligible Settlement Collective Member" means any and all persons who were employed by BBMC Mortgage, LLC or its successor division within Bridgeview Bank in the position

of MLO and classified as non-exempt under the FLSA, at any time from August 20, 2012 to January 31, 2019 and who filed a timely Consent to Become a Party Plaintiff in this Lawsuit. The Parties agree that there are 261 Eligible Settlement Collective Members.

1.8 "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation under this Agreement, including FICA, FUTA, and SUTA obligations.

1.9 "Gross Settlement Amount" means Seven Hundred Twenty Five Thousand and No/100ths Dollars ($725,000.00), which is the maximum amount that Defendants have agreed to pay to fully resolve and settle this dispute, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating Settlement Collective Members; the cost of settlement administration; and any Court-approved Service Award. Defendant will not be required to pay any more than the gross total of Seven Hundred Twenty Five Thousand and No/100ths Dollars ($725,000.00), except for the Employer Payroll Taxes.

1.10 "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Collective Member as shown in Defendants' records or any updated address the Settlement Administrator possesses for such Member at the time of mailing.

1.11 "Last Known E-mail Address" or "Last Known E-mail Addresses" means the most recently recorded personal e-mail address for an Eligible Settlement Collective Member as shown in Defendants' records or any updated email address the Settlement Administrator possesses for such Member at the time of emailing.

1.12 "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile or home telephone number for an Eligible Settlement Collective Member as shown in Defendants' records or any updated telephone number the Settlement Administrator possesses for such Member.

1.13 "Litigation" or the "Lawsuit" or the "Action" mean the above-captioned lawsuit. "Complaint" means the Complaint dated August 20, 2015 that was filed by Named Plaintiff in this Action.

1.14 "Named Plaintiff" means Lynn Jean Pieksma.

1.15 "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for: (a) the Settlement Administrator's fees and costs (b) Named Plaintiff's and Deponents' Service Awards and (c) Court-approved attorneys' fees and costs for Plaintiffs' Counsel.

1.16 "Order Granting Approval of Settlement" or "Approval Order" means an order to be approved and entered by the Court, which gives final approval to the Settlement and this Agreement, and enters final judgment incorporating the terms of this Settlement and dismissing the Action with prejudice.

1.17    "Participating Settlement Collective Members" means each Eligible Settlement Collective Member, including any Named Plaintiff, who timely cashes a Settlement Check and thereby agrees to the Settlement and the release of claims in Section 4.

1.18    "Parties" collectively means the Plaintiffs and Defendants.

1.19    "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.20    "Releasees" means BBMC Mortgage, LLC, Bridgeview Bancorp, Inc. and each and all of their affiliates, parents, subsidiaries, predecessors, successors and their respective employees and agents.

1.21    "Settlement" means the settlement between the Parties embodied and contained in this Joint Stipulation of Settlement and Release.

1.22    "Settlement Administrator" means Analytics LLC.

1.23    "Settlement Agreement" or "Agreement" means this Joint Stipulation of Settlement and Release and exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.24    "Settlement Check" means the check issued to Eligible Settlement Collective Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.25    "Settlement Notice" means the document entitled Official Notice and Opportunity to Participate in Settlement, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit A.

## 2.    APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT COLLECTIVE MEMBERS

2.1    Binding Agreement. This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the dispute.

2.2    Duties of the Settlement Administrator. The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice to Eligible Settlement Collective Members; preparing and mailing Settlement Checks; distributing the approved Service Award and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; retaining and providing a copy of the Settlement Checks cashed by the Participating Settlement Collective Members to

Defendant's Counsel; and preparing a declaration describing all duties performed and claims administration statistics.

2.3     The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement. The Settlement Administrator will provide such information to either Party upon request. The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notices to Eligible Settlement Collective Members, the claims administration process, and distribution of the Settlement Checks.

2.4     Defendants agree to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Administrator in locating Eligible Settlement Collective Members. The Parties agree that it is their mutual goal to maximize participation in the settlement.

2.5     Within fourteen (14) days of the execution of this Settlement Agreement, Plaintiffs' Counsel shall file a Motion for Approval of Settlement of Collective Action ("Approval Motion"). Plaintiffs' Counsel will provide Defendants with a draft of the Approval Motion for review and comment at least seven (7) days prior to filing it with the Court, and Defendants will provide Plaintiffs with its comments within five (5) days of receiving the draft Approval Motion. Should Plaintiffs not incorporate Defendants' reasonable comments, Defendants may respond to Plaintiffs' Approval Motion within fourteen (14) days after the Approval Motion is filed. Plaintiffs then will be permitted a reply within seven (7) days after Defendants' response. With the Approval Motion, Plaintiffs' Counsel also will file the Settlement Agreement, Approval Order, and Settlement Notice. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (b) approve the proposed Settlement Notice to be sent to Eligible Settlement Collective Members and the Settlement Notice distribution process, (c) incorporate the terms of this Settlement, and (d) enter Judgment dismissing the case without prejudice, with leave to reinstate on or before 180 days after the Approval Order is entered and in the event a motion to reinstate is not filed on or before 180 days after the Approval Order is entered, the case shall be deemed, without further order of the Court, to be dismissed with prejudice.

2.6     Within five (5) business days after the Approval Order is entered, Defendant shall give the Settlement Administrator a list, in electronic form, of the names, Last Known Addresses, Last Known E-mail Addresses, Last Known Telephone Numbers, social security numbers, and the work weeks during which each Eligible Settlement Collective Member performed any compensable work (excluding, for example, vacation, sick days, leaves of absence) in the position of MLO from August 20, 2012 to January 31, 2019 ("Class List").

2.7     This Settlement Agreement is intended to cover 261 Eligible Settlement Collective Members. The Parties jointly may agree for good cause to allow an individual who received a Notice and Consent Form but who did not timely elect to participate in the Lawsuit to become an Eligible Settlement Collective Member; provided, however, that in no event shall Defendants be required to pay more than the Gross Settlement Amount of

Seven Hundred Twenty Five Thousand Dollars ($725,000.00). The decision to allow an individual to become an Eligible Settlement Collective Member under this Section shall not constitute a precedent for any other individual.

2.8   As discussed in Section 3.4(B), Settlement Notices together with Settlement Checks will be mailed via First Class United States mail to Eligible Settlement Collective Members by the Settlement Administrator no earlier than thirty-five (35) days after the Approval Order is entered and no appeal of the Approval Order is filed. If there is an appeal of the Approval Order by any person, Settlement Notices and Settlement Checks shall not be sent until all appeals are decided and the case is returned to the district court and the district court enters an Order that the Settlement Notices and Settlement Checks should be sent.

2.9   Any mailing to an Eligible Settlement Collective Member required under this Agreement shall be deemed "received" by the Eligible Settlement Collective Member to whom it was sent three (3) calendar days after the date of mailing. By way of example, a mailing on April 5 shall be deemed received on April 8. There will be no exceptions to this provision. The Settlement Administrator shall maintain a record sufficient to establish the date of mailing.

2.10   Settlement Checks issued pursuant to this Agreement shall expire ninety (90) days after they are received. If a Settlement Check has not been cashed by any Eligible Settlement Collective Member within forty-five (45) days after it is received, the Settlement Administrator shall send a letter or postcard to the Eligible Settlement Collective Member via First Class United States mail inquiring whether they received the Settlement Check and reminding them of the expiration of the Acceptance Period. After the Acceptance Period expires, the Settlement Administrator will issue a stop payment order on all uncashed or returned checks. In the event an Eligible Settlement Collective Member reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check, which must be cashed within the original Acceptance Period. In no event shall an Eligible Settlement Collective Member be issued a replacement check until any prior check sent to them has been cancelled and only one replacement check will be issued to any Eligible Settlement Collective Member, unless the Parties mutually agree to send additional replacement check(s).

2.11   Thirty (30) days before the close of the ninety (90) day Acceptance Period, at Plaintiffs' Counsel's request, the Settlement Administrator also shall take additional steps to remind Eligible Settlement Collective Members of their eligibility to participate in the Settlement.

2.12   After the Approval Order is entered, Defendants will inform Plaintiffs' counsel whether they intend to send one or more communications to their current employees encouraging them to participate in the Settlement. Defendants will provide Plaintiffs' counsel with at least seven (7) days to review the communication and will not send the communication if counsel for the Parties cannot agree on the content.

2.13   The Settlement Administrator shall take all reasonable steps to obtain the correct address of Eligible Settlement Collective Members for whom the Settlement Notice is returned by

the United States Postal Service as undeliverable and shall make all reasonable attempts to ensure that the Settlement Notice and Settlement Check are successfully delivered. The Settlement Administrator will notify Plaintiffs' Counsel and Defendants' Counsel of any mailing sent to any Eligible Settlement Collective Member that is returned as undeliverable. The issuance of a new Settlement Notice and Settlement Check to a new address after the first Settlement Notice and Settlement Check is returned undeliverable will restart the Acceptance Period. The Settlement Administrator shall issue a stop-payment order on all undelivered, returned checks.

2.14    If within twenty days (20) after the close of the Acceptance Period an Eligible Settlement Collective Member reports a lost or destroyed check, informs the Settlement Administrator that s/he did not receive a check or otherwise requests reissuance of his/her Settlement Check, Defendants may approve the reissuance of a Settlement Check to such Eligible Settlement Collective Members on a case-by-case basis for good cause shown. Reissuance to a given Eligible Settlement Collective Member will not require reissuance to any other Eligible Settlement Collective Member.

2.15    Plaintiffs' Counsel and Defendants' Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.16    Retention/Filing of Copies of Settlement Checks. The Settlement Administrator shall on a weekly basis transmit to counsel for the Parties the names of the Eligible Settlement Collective Members whose Settlement Checks were cashed during the Acceptance Period and outside the Acceptance Period and shall provide copies of the cashed checks to counsel for the Parties as they become available to the Settlement Administrator. Within 45 days after the Acceptance Period ends, the Settlement Administrator shall provide to Counsel for the Parties a final list of all Eligible Settlement Collective Members whose Settlement Checks were cashed. It will be prima facie evidence that any Eligible Settlement Collective Member whose Settlement Check was cashed, elected to become a Participating Settlement Collective Member and agreed to participate in the Lawsuit, to be bound by the Settlement Agreement and to enter into the release in Section 4.1 of this Agreement. It will be the Eligible Settlement Collective Member's burden to prove that s/he did not cash or authorize the Settlement Check to be cashed. Defendants may, at their option, file with the Court a list of the Participating Settlement Collective Members.

2.17    Effect of Court Failure to Approve Settlement. In the event the Court fails to approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement

or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence and any applicable state law.

## 3.     SETTLEMENT TERMS

### 3.1     Settlement Payments

(A)     Defendant agrees to pay the maximum gross amount of Seven Hundred Twenty Five Thousand and No/100ths Dollars ($725,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Collective Members, any Court-approved Service Award as more fully set forth herein, the Settlement Administrator's fees and costs and any claim for attorneys' fees and costs. Defendants will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B)     Within ten (10) days of the Approval Order and creation of the QSF by the Settlement Administrator, Defendant shall deposit the Gross Settlement Amount into the QSF. In the event of an appeal of the Approval Order, the Gross Settlement Amount shall be returned to Defendant within three (3) business days after the appeal is filed pending disposition of the appeal in accordance with Section 2.8.

(C)     Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Collective Members who do not timely cash their Settlement Check, or that otherwise remains in the QSF or under the control of the Settlement Administrator upon the final accounting of the settlement funds, shall be donated to an IRS qualified charitable organization or foundation to be designated by Defendants within 30 days after entry of the Approval Order. The final accounting and donation shall occur no later than 200 days after the first Settlement Checks are mailed and the Settlement Administrator shall provide Plaintiffs' Counsel and Defendants' Counsel with a final accounting and proof of donation.

### 3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)     In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

(B)     The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. In the event that the Court (or any appellate court) awards less than the

requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that is not approved by the Court shall become part of the Net Settlement Fund.

**3.3** **Service Awards to Named Plaintiff and Deponents.**

(A)  In her Approval Motion, Named Plaintiff will apply to the Court to receive $10,000.00 from the Gross Settlement Amount for the services she rendered to the collective.

(B)  In her Approval Motion, Named Plaintiff will apply to the Court to pay $500 each to deponents Jason Weatherman, Roger Hayes, Scott Kardos, Max Burns, and Michael Pfeil from the Gross Settlement Amount for the services each rendered to the collective.

(C)  This Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiff's and each Deponent's recovery from the Net Settlement Fund as an Eligible Settlement Collective Member. The substance of the Named Plaintiff's and the Deponents' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. Any Service Award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4** **Distribution of Payments.**

(A)  The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorneys' fees and costs will be wired to Plaintiffs' Counsel by the Settlement Administrator, thirty-five (35) days after the Approval Order is entered. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(B)  The Settlement Checks and the Service Awards will be mailed to Eligible Settlement Collective Members and the Named Plaintiff, respectively, by the Settlement Administrator along with the Settlement Notices in accordance with Section 2.8. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(C)  The allocation to Eligible Settlement Collective Members for their Settlement Checks will be made from the Net Settlement Fund after deducting the payments made to the Eligible Settlement Collective Members as set forth in subsection (D)

of this Section. The estimated proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

(1)    Each Eligible Settlement Collective Member, including the Named Plaintiff, shall be assigned one point for each week in which the individual performed at least one day of compensable work as an MLO between August 20, 2012 and January 31, 2019. Each Eligible Settlement Collective Member who worked in California shall have their point(s) multiplied by 1.2 to reflect their California state law claims.

(2)    To calculate each Eligible Settlement Collective Member's proportionate share:

    (a)    Add all points for all Eligible Settlement Collective Members together to obtain the "Denominator";

    (b)    Divide the number of points for each Eligible Settlement Collective Member by the Denominator to obtain each Eligible Settlement Collective Members' "Portion of the Net Settlement Fund";

    (c)    Multiply each Eligible Settlement Collective Member's proportionate share of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Collective Member's Settlement Check amount. Each Eligible Settlement Collective Member shall be offered a Settlement Payment in the amount calculated as set forth in subparagraph (C) above, or in the amount of Fifty Dollars ($50.00), whichever is greater.

(D)    Tax Characterization of Payments.

(1)    For tax purposes, 50% of the settlement payment to a Participating Settlement Collective Member shall be treated as settlement of back wages and 50% of such payment shall be treated as settlement of interest, any applicable penalties, liquidated damages and other non-wage relief.

(2)    Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as interest, any applicable penalties, and/or liquidated damages or other non-wage relief shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing any necessary tax reporting and

information forms to Participating Settlement Collective Members and any governmental entity. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and shall be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any Service Award pursuant to Section 3.3 shall be made with whatever withholding (if any) that is deemed proper by the Settlement Administrator and reported to the IRS in whatever way the Settlement Administrator deems proper.

(3)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Settlement Collective Member receiving a Settlement Check or Service Award. Defendants make no representations, and it is understood and agreed that Defendants have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Collective Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff. The Settlement Notice will advise Eligible Settlement Collective Members to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(5)     None of the amounts paid to the Named Plaintiff or Participating Settlement Collective Members shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendants, including for purposes of any bonus of any kind.

## 4.     RELEASE OF CLAIMS

4.1     All Settlement Checks shall contain the following on the back of the check:

I understand that I must cash this check on or before [INSERT date 93 days after mailing] or the check will be null and void.

By cashing the check, I consent to join in the case entitled *Pieksma v. BBMC Mortgage, LLC et. al* pending in the United States District Court for the Northern District of Illinois, No. 15-cv-7312, and agree to be bound by the Settlement Agreement approved in that case and I agree to the waiver and release of claims contained on the stub to this check and recited in the Notice at Paragraph 9.

All Settlement Checks shall contain on the stub of the check:

I waive, release, and forever discharge any claim I have or may have through [INSERT date settlement agreement executed], against BBMC Mortgage, LLC,

Bridgeview Bancorp, Inc., and their affiliates, parents, subsidiaries, predecessors, successors and their respective employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law, regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and all applicable state and local wage/hour and wage payment laws, relating to my employment at Bridgeview Bancorp, Inc. and/or any of its subsidiaries and affiliates (including but not limited to BBMC Mortgage, LLC and its successor division within Bridgeview Bank) in the position of Mortgage Loan Originator or similar position at any time from August 20, 2012 to January 31, 2019. If employed in the State of California, I further waive and release all claims for non-payment or improper payment of paid rest breaks; failure to provide paid rest breaks; failure to provide meal periods; failure to provide accurate written wage statements; and waiting time penalties, under the California Labor Code, California Business and Professions Code and any other law, regulation or order of the State of California or any governmental entity within the State of California.

Individuals in the State of California further release any and all rights under Section 1542 of the California Civil Code which you have through the date the Settlement Agreement is executed. Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

4.2    Any Eligible Settlement Collective Member who timely cashes a Settlement Check agrees to the Settlement and to the release of claims in Section 4.1. Any Eligible Settlement Collective Member who does not timely cash a Settlement Check will not be bound by the Settlement or release of claims in this Section 4.1.

4.3    By signing the Agreement, and receiving a Service Award, the Named Plaintiff additionally waives, releases and discharges BBMC Mortgage, LLC, Bridgeview Bancorp., Inc. and their affiliates, parents, subsidiaries, predecessors, successors, employee benefit plans and their respective employees and agents, from all demands, claims and actions, whether known or unknown, relating to her employment or termination of employment with any Releasee including but not limited to claims for overtime compensation and including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act, Equal Pay Act, Employee Retirement Income Security Act of 1974, Workers Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, California Fair Employment and Housing Act, California Labor Code, California Business and Professions Code and any other federal, state or local statute, regulation, and order, and in common law, through the date the Named Plaintiff signs this Agreement; provided, however, that Named Plaintiff does not waive the right to file a charge or complaint with any administrative agency but

does waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on her own behalf or by any third party, including as a member of any class or collective action. Named Plaintiff does not release any claim that cannot be released as a matter of law or her rights under this Agreement.

4.4    By signing the Agreement, Named Plaintiff becomes a party to the Agreement.

## 5.    VOIDING THE AGREEMENT

5.1    If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Approval Order in substantially the form submitted by the Parties, or fails to enter a Final Judgment, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive, and Defendants shall have no obligations to make any payments under the Settlement or this Agreement

5.2    A decision of the Court declining to approve any material condition of this Agreement, which effects a fundamental change of the Parties' agreement (except as to any payment under Sections 3.2 and 3.3), including requiring that Defendants pay any amount in excess of Seven Hundred Twenty Five Thousand and No/100ths Dollars ($725,000.00), shall render the entire Settlement voidable and unenforceable as to all Parties at the option of either Party. Each Party may exercise its option to void this Settlement by giving notice, in writing, to the other and to the Court within fifteen (15) days of the Court's disapproval of any material condition, but in no event at any time after the Approval Order.

5.3    Unless the Parties agree in writing otherwise, in the event that the Agreement is not approved by the Court or the Settlement set forth in the Settlement Agreement is revoked, terminated, cancelled, declared void or fails to become effective in accordance with its terms, or if there is no Approval Order, the Parties shall resume litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, and the approval of any settlement class/collective for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in such litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated.

## 6.    LIMITED CONFIDENTIALITY

6.1    The Parties and their Counsel will not issue any public statement, press release, website postings, social media posting, marketing piece or press outreach disclosing the identities of the Defendants, except as necessary to implement the settlement. If contacted by the media at any time, Named Plaintiff and Class Counsel will say only that, "The Parties have worked together to reach a fair resolution of this dispute" or words to that effect.

## 7. NON-DISPARAGEMENT

7.1 Named Plaintiff will not make any disparaging or negative remarks about Defendants, its products, business affairs or employees. However, nothing in this Agreement prohibits any individual from providing information to, filing a complaint or charge with, or cooperating with any administrative agency, court or other governmental entity.

7.2 During their employment with Defendants, Defendants' management employees will not make any disparaging or negative remarks about Plaintiff or her business affairs. However, nothing in this Agreement prohibits any individual from providing information to, filing a complaint or charge with, or cooperating with any administrative agency, court or other governmental entity.

## 8. PARTIES' AUTHORITY

8.1 The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 9. MUTUAL COOPERATION

9.1 The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 10. NOTICES

10.1 Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Collective:

Rowdy B. Meeks
Rowdy Meeks Legal Group LLC
8201 Mission Road, Suite 250
Prairie Village, KS 66208
(913) 766-5585
Rowdy.meeks@rmlegalgroup.com

To Defendants:

Bruce R. Alper
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL 60601
(312) 609-7500
balper@vedderprice.com

## 11.  NO ADMISSION OF LIABILITY

11.1  Defendants deny all of the allegations in the Complaint and deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle this matter on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation.

## 12.  INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

12.1  Further Acts.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

12.2  No Assignment.  Named Plaintiffs' Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the litigation, or any related action, and any attempt to do so shall be of no force or effect.

12.3  Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

12.4  Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

12.5  Arms' Length Transaction; Materiality of Terms.  The Parties. through their respective counsel, have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

12.6  Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**12.7**   Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**12.8**   Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**12.9**   Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**12.10**   Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**12.11**   Notice. The Settlement Notice will advise all Eligible Settlement Collective Members of the binding nature of the release and that by cashing a Settlement Check they are bound by the release provisions in this Agreement.

**12.12**   Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**12.13**   Facsimile and Email Signatures. Any Party may execute this Agreement, whether electronically or otherwise, by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other Party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

**12.14**   Signatories. This Agreement is valid and binding if signed by Defendants' authorized representative and Named Plaintiff.

DocuSign Envelope ID: FE36B4AC-3B4D-463E-A53C-205E53A2D7B0

**WE AGREE TO THESE TERMS.**

DATED: February 28, 2019      **BBMC MORTGAGE LLC**
                                  **BRIDGEVIEW BANCORP, INC.**

                                  By: _____

                                  Its: Attorney _____

DATED: February ___, 2019      **LYNN JEAN PIEKSMA**

        2/28/2019

                                 ┌ DocuSigned by:
                                  └ 707EEAB0A6B64D9

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LYNN JEAN PIEKSMA, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.

BBMC MORTGAGE, LLC and BRIDGEVIEW
BANCORP, INC.,

        Defendants.

No. 1:15-cv-7312

Judge Jorge L. Alonzo
Magistrate Michael T. Mason

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

# EXHIBIT A

# SETTLEMENT NOTICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYNN JEAN PIEKSMA, on behalf of herself
and all others similarly situated,

                Plaintiff,

v.

BBMC MORTGAGE, LLC and BRIDGEVIEW
BANCORP, INC.,

                Defendants.

No. 1:15-cv-7312

Judge Jorge L. Alonzo
Magistrate Michael T. Mason

**OFFICIAL COURT NOTICE AND
OPPORTUNITY TO PARTICIPATE IN SETTLEMENT**

To:

**[NAME]
[ADDRESS]
[CITY, STATE ZIP]**

**Please be advised that because you submitted a timely Consent to Become a Party Plaintiff in this lawsuit, you are entitled to a payment from the settlement of this suit. A settlement check payable to you is enclosed. Read this entire Notice before signing and cashing the check.**

**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

☐    This Notice is directed to any individual who was employed by BBMC Mortgage, LLC or its successor division within Bridgeview Bank ("BBMC") as a Mortgage Loan Originator or similar position (all such positions referred to herein as "MLOs") at some time between August 20, 2012 and January 31, 2019 (the "Eligibility Period") and who timely filed a Consent to Become a Party Plaintiff in this lawsuit ("Eligible Settlement Collective Member").

☐    Plaintiff Lynn Jean Pieksma is a former MLO who sued BBMC alleging that it failed to pay her and other similarly situated MLOs all overtime compensation due them; and in California, failed to pay for rest breaks and did not provide meal periods. Plaintiff filed the lawsuit as a collective action under the federal Fair Labor Standards Act ("FLSA"), the California Labor Code and California Business and Professions Code.

☐ BBMC has denied the Plaintiff's allegations and asserts that MLOs were compensated correctly under the law. Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense and inconvenience. The Court has not made any ruling on the merits of the claims and no Party has prevailed in this action. However, the Court has reviewed and approved the settlement and this Notice.

☐ The settlement monies are being used to pay Eligible Collective Settlement Members and to pay attorneys' fees, service awards, litigation costs and the expense of administering the settlement.

☐ Although it denies the allegations, BBMC is encouraging all Eligible Collective Settlement Members to participate in the settlement and accept their settlement payment.

☐ Under the allocation formula created by the settlement, you are being offered the enclosed settlement payment of $_____. This amount is based on the number of weeks in which you worked as an MLO during the Eligibility Period. If you worked as an MLO in the State of California during the Eligibility Period, you will receive a higher payment in consideration for your release of claims under California state law as alleged in the lawsuit. The minimum Settlement Payment is Fifty Dollars ($50.00).

☐ According to BBMC records, you worked as an MLO in _____ work weeks during the Eligibility Period. You may have worked longer as an MLO during other periods. BBMC's personnel records are presumed to be correct unless you submit evidence to the contrary. If you believe BBMC's personnel records are incorrect, you may submit documents proving otherwise to the Settlement Claims Administrator at the address listed below, postmarked on or before [INSERT DATE 93 days after mailing], and if appropriate, your settlement payment will be adjusted and a supplemental check will be issued to you.

☐ ☐ Neither Class Counsel nor BBMC make any representations concerning the tax consequences of your settlement payment. You are advised to obtain personal tax advice prior to acting in response to this Notice.

☐ Your decisions have legal consequences for you. You have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **IF YOU CASH THE CHECK** | By cashing the settlement check, you are agreeing to participate in the settlement and you are releasing all claims against BBMC and its affiliates relating to non-payment or improper payment of overtime compensation and, if applicable, under California law governing rest breaks and meal periods, while you were an MLO during the Eligibility Period. |
| **IF YOU DO NOT CASH THE CHECK** | If you do not want to participate in the settlement, you should not cash your settlement check. If you do not cash your settlement check by [INSERT DATE 93 days after mailing], your check will be cancelled, you will not receive a |

|  | settlement payment in this case, and you will not release any claims against BBMC under the settlement. |

☐   These rights and options are explained more fully below.

## BASIC INFORMATION

### 1. Why did I receive this Notice and a settlement check?

BBMC's records showed that worked as a non-exempt MLO in one or more work weeks during the Eligibility Period. You also submitted a timely Notice of Consent to Become a Party Plaintiff in this lawsuit.

You are receiving this Notice because you have a right to know about the settlement of this collective action lawsuit that affects your rights.

Along with this Notice, you are receiving a settlement check that you may cash if you agree to participate in the settlement of this lawsuit and to release claims against BBMC and its affiliates as explained in Paragraph 9 below.

The Court supervising this case is the United States District Court for the Northern District of Illinois located in Chicago, Illinois. The lawsuit is known as *Pieksma v. BBMC Mortgage, LLC and Bridgeview Bancorp, Inc.,* No. 15-cv-7312.

The individual who filed the lawsuit is the "Plaintiff." BBMC Mortgage, LLC and Bridgeview Bancorp, Inc. are the "Defendants."

### 2. What is this lawsuit about?

The lawsuit alleges that BBMC did not pay MLOs all overtime compensation due them in violation of federal law and, for those MLOs who worked in California, failed to pay them for rest breaks and did not provide meal periods in violation of California state law.

Defendants deny these allegations.

The Court has not made any ruling on the merits of the claims or defenses, and no Party has prevailed in this action.

### 3. What is a collective action?

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims. However, the individuals who have similar claims do not become part of the collective action unless they opt-in, or agree to join the collective action. You agreed to join the collective when you filed a timely Consent to Become a Party Plaintiff and you are now being offered the opportunity to participate in the settlement of this lawsuit by cashing the enclosed settlement check.

### 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or BBMC and neither Party prevailed. The Parties agreed to a settlement to avoid further disputes and the risk, expense and inconvenience of litigation. The Plaintiff and her attorney believe that this settlement is a good outcome for all individuals who decide to participate in the settlement. But you need not participate if you believe the settlement is not in your interests.

## WHO IS IN THE SETTLEMENT

### 5. How do I know if I will be included in the Settlement?

You are receiving a settlement check because you submitted a timely Consent to Become a Party Plaintiff. If you cash the settlement check no later than [INSERT date 93 days after mailing], you will be bound by the settlement and you will be releasing claims as described in Paragraph 9 below.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 6. What does the Settlement provide?

BMO has agreed to pay up to $725,000.00 into a fund to be divided among you and the other Eligible Settlement Collective Members. The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to Eligible Settlement Collective Members, any Court-approved service award to Plaintiff, and the Settlement Administrator's fees and costs. Settlement checks that are not cashed by [INSERT date 93 days after mailing] will be null and void.

### 7. How much is my payment and how was it calculated?

Based on the allocation formula that has been approved by the Court, you are receiving a settlement check for $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2, and half of which will not be taxed at this time and will be reported on IRS Form 1099. The allocation formula takes into account the number of work weeks in which you worked as an MLO during the Eligibility Period. The Settlement Agreement contains the exact allocation formula. An Eligible Settlement Collective Member will receive a Settlement Payment of no less than Fifty Dollars ($50,00). You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

The allocation formula provides Eligible Settlement Collective Members who worked in California during the Eligibility Period with a higher payment than other Eligible Settlement Collective Members in settlement of the claims under California law with respect to rest breaks and meal periods.

## HOW YOU GET A PAYMENT

**8. How do I get my payment?**

A check is enclosed. All you have to do is cash the settlement check by [INSERT date 93 days after mailing].

**9. What am I giving up if I cash the settlement check?**

You will not be bound by the settlement unless you timely cash your settlement check. If you do cash the settlement check, you are agreeing to the release of claims against BBMC and its affiliates as described in this Paragraph 9. It also means that all of the Court's orders in this case will apply to you and will legally bind you.

By cashing the settlement check:

You waive, release, and forever discharge any claim you have or may have through [INSERT date settlement agreement executed], against BBMC Mortgage, LLC, Bridgeview Bancorp, Inc., and their affiliates, parents, subsidiaries, predecessors, successors and their respective employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law, regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and all applicable state and local wage/hour and wage payment laws, relating to your employment at Bridgeview Bancorp, Inc. and/or any of its subsidiaries and affiliates (including but not limited to BBMC Mortgage, LLC and its successor division within Bridgeview Bank) in the position of Mortgage Loan Originator or similar position at any time from August 20, 2012 to January 31, 2019. If employed in the State of California, you further waive and release all claims for non-payment or improper payment of paid rest breaks; failure to provide paid rest breaks; failure to provide meal periods; failure to provide accurate written wage statements; and waiting time penalties, under the California Labor Code, California Business and Professions Code and any other law, regulation or order of the State of California or any governmental entity within the State of California.

Individuals in the State of California further release any and all rights under Section 1542 of the California Civil Code which you have through the date the Settlement Agreement is executed. Section 1542 provides:

A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

The Court has determined that the lawyers at the law firm of Rowdy Meeks Legal Group LLC are qualified to represent you and the other Eligible Settlement Collective Members. These lawyers are called "Class Counsel." You will not be charged for these attorneys. You do not need to retain your own attorney to participate in the settlement. However, you may retain or consult with any attorney you choose at your own expense before deciding whether to participate in the settlement.

### 11. What other payments are coming out of the settlement fund?

A. Attorney's Fees and Costs. The Court has approved the payment of $INSERT AMOUNT from the settlement fund to Class Counsel for payment of attorneys' fees. These fees compensate Class Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement. The Court also has approved the payment of $INSERT AMOUNT to Class Counsel for their out-of-pocket costs.

B. Service Award to Named Plaintiff and Deponents. The Court has approved the payment of $INSERT AMOUNT from the settlement fund to the Named Plaintiff to recognize the risk she took and her service to the collective action, and the payment of $INSERT AMOUNT to the individuals who had their depositions taken in this case. Named Plaintiff and the Deponents will receive these payments in addition to a payment under the allocation formula.

C. Settlement Administration. The fee for the Settlement Administrator also will be paid from the settlement fund.

## FOR MORE INFORMATION

### 12. Are there more details about the Settlement?

This Notice summarizes the proposed settlement. A document filed with the Court called the Joint Stipulation of Settlement and Release contains all terms of the settlement. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the settlement agreement, the provisions in the settlement agreement control. You may obtain a copy of the settlement agreement by sending a request, in writing, to the Settlement Administrator at:

NAME AND CONTACT INFO OF SETTLEMENT ADMINISTRATOR

### 13. How do I get more information?

If you have other questions about the settlement, you can contact the Settlement Administrator, or Class Counsel at the address and/or telephone number below.

Rowdy B. Meeks

CHICAGO/#3262215.3

Rowdy Meeks Legal Group LLC
8201 Mission Road, Suite 250
Prairie Village, KS 66208
(913) 766-5585
Rowdy.Meeks@rmlegalgroup.com

DATED:      _____, 2019